IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION

| | | |
|---|---|---|
| RITA BRITTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 13-cv-6547 |
| | ) | |
| ITT TECHNICAL INSTITUTE, ET AL., | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants' motion to dismiss Counts VIII, IX, and X of Plaintiff's complaint [15]. For the reasons set forth below, the Court grants Defendants' motion [15] and dismisses Counts VIII, IX, and X. Counts I through VII remain pending.

**I.  Background**[1]

Plaintiff Rita Britton began working at ITT in 2002 as an adjunct instructor at its Oak Brook, Illinois campus. She became a full-time instructor in 2003, teaching English Composition I and II, Group Dynamics, Portfolio, Written Analysis, Research Methods, World Culture, Social Psychology, and Strategy. Defendant Lisa Breitenberg was the Director of ITT's Oak Brook campus during Plaintiff's employment, and Defendant Natalie Hay was the Benefits Administrator at ITT's corporate headquarters. Plaintiff alleges that she was an exemplary employee and was never reprimanded during her time at ITT. Despite this, Plaintiff alleges that four of the other five full-time instructors, all of whom were male, were paid more. Plaintiff alleges that she was terminated in the summer of 2011.

---

[1] In reviewing the instant motion, the Court accepts as true the facts alleged in Plaintiff's complaint and makes all reasonable inferences in her favor. See, *e.g.*, *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 879 (7th Cir. 2012).

For much of her time at ITT, Plaintiff had difficulty walking. She used a cane and placed a handicapped placard on her car. Plaintiff alleges that ITT did not have automatic doors and that its handicapped parking spots were far from the entrance of the building. According to Plaintiff, she informed Breitenberg and Dean John Metych of these issues, but nothing was done.

In 2010, while undergoing treatment for hip pain that she had suffered since 2008, Britton was diagnosed with breast cancer. Britton underwent surgery and took medical leave from June to October 2010. Britton alleges that Hay asked her, "When are you ever coming back?" Britton returned to work in October 2010, but took leave again in March 2011 for hip surgery. Britton required additional care for a staph infection in her right hip. According to the complaint, the staph infection prolonged the disability period by six weeks and necessitated a second surgery on April 8, 2011. Britton's doctor faxed ITT a note on April 22, 2011, which provided that Britton would be unable to work until further notice. According to the complaint, Britton contacted Lisa Breitenberg regarding her continued employment, and Breitenberg told Britton not to worry.

Approximately one month later, in July 2011, Britton received a letter from Defendants stating that her disability leave time had run out and that she was being replaced. Plaintiff alleges that the letter did not contain an explanation of ITT's medical leave policy or Britton's FMLA rights. According to Plaintiff, she called Breitenberg for clarification. When Britton asked if she had been fired, Breitenberg responded "you are and you aren't. We need to fill the position and our student census is down and we eliminated your full time position." Plaintiff also alleges that Breitenberg told her that she could reapply for employment with ITT as an adjunct. Meanwhile, Britton continued to receive disability pay while Dean John Metych sought a replacement instructor.

Britton underwent another hip surgery on July 12, 2011, shortly after she received the letter from ITT. Following the surgery, she informed ITT that she could resume teaching in during the 2011 fall term. Breitenberg informed her that she could return as an adjunct instructor, but that she would need to reapply online. Her doctor then informed ITT that she could teach during the fall term; however, when she contacted Metych, he informed her that all of ITT's classes had instructors and that he had not received a return-to-work release. When Britton contacted Breitenberg to confirm this information, Breitenberg admitted that she had received a return-to-work release, but also informed Britton that there was no position for her. Plaintiff alleges upon information and belief that only a few days prior to the start of the fall term, ITT hired Robert Bell and Rory Jobst, both male and under age 40, to replace Britton.

During her employment, Plaintiff received a copy of the ITT Sick Pay Policy, which included the following language:

> This policy shall be administered in compliance with all applicable requirements of all applicable laws. ITT/ESI reserves the unilateral right to amend, change, or cancel this policy or any part thereof, or reduce, modify, suspend, or terminate its terms, in its sole discretion at any time for any reason, with or without notice, either retrospectively or prospectively. This policy is not a contract or assurance of compensation, continued employment, or benefit of any kind.

Compl., Ex. D.

On September 12, 2013, Plaintiff filed a ten-count complaint against Defendants ITT Technical Institute ("ITT"),[2] Natalie Hay, and Lisa Breitenberg. Plaintiff brings various claims related to her employment at ITT, including violations of Title VII, the ADEA, the ADA, the EPA, the FMLA, and the Illinois Equal Pay Act for unlawful age, disability, and sex discrimination, failure to accommodate, and additional unlawful employment practices. The

---
[2] According to ITT, its proper name is ITT Educational Services, Inc., not ITT Technical Institute.

complaint also includes claims for breach of contract against ITT (Count VIII) and negligent and intentinonal infliction of emotional distress against ITT, Hay, and Breitenberg (Counts IX and X). Defendants move to dismiss Counts VIII, IX, and X.

## II. Legal Standard

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint, not the merits of the case. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). In reviewing a motion to dismiss under Rule 12(b)(6), the Court takes as true all factual allegations in Plaintiff's complaint and draws all reasonable inferences in its favor. *Killingsworth*, 507 F.3d at 618. To survive a Rule 12(b)(6) motion to dismiss, the claim first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the claim must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). However, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the * * * claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555) (ellipsis in original). The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011); *cf. Scott v. City of Chi.*, 195 F.3d 950, 952 (7th Cir. 1999) ("Whether a complaint

4

provides notice, however, is determined by looking at the complaint as a whole.").

**III. Analysis**

In Count VIII, Plaintiff alleges that ITT's Policy Manual constituted a binding and enforceable employment contract and that ITT failed to adhere to the manual, which resulted in her termination. In Counts IX and X, Plaintiff alleges that all three Defendants engaged in extreme and outrageous conduct that caused Plaintiff to suffer severe emotional distress. Defendants move to dismiss these three counts.

**A. Breach of Contract (Count VIII)**

In Count VIII, Plaintiff asserts a claim for breach of contract against Defendant ITT, alleging that she was terminated due to ITT's failure to document or inform Plaintiff of her used sick time in violation of ITT's Sick Pay Policy. ITT contends that Plaintiff's breach of contract claims fails because ITT's Policy Manual is not a contract. Illinois law provides that employee handbooks may constitute enforceable contracts under certain conditions (see, *e.g., Duldulao v. Saint Mary of Nazareth Hosp. Center,* 505 N.E.2d 314, 318 (Ill. 1987)), but not where the handbook expressly and conspicuously disclaims the creation of contractual obligations. See *Garcia v. Kankakee County Housing Authority,* 279 F.3d 532, 536 (7th Cir. 2002); *Davis v. Time Mirror Magazines, Inc.,* 697 N.E.2d 380, 387–88 (Ill. App. Ct. 1998); *Spaulding v. Abbott Laboratories*, 2010 WL 4822894, at *9 (N.D. Ill. Nov. 22, 2010). The ITT handbook specifically disclaims the creation of any contractual obligations on the first page of the handbook by stating that the "policy is not a contract."[3] See Compl., Ex. D. (ITT Policy Manual) ("This policy is not a contract or assurance of compensation, continued employment, or benefit of any kind.").

---

[3] The relevant portion of the ITT Employee Relations Policy Manual is attached to the complaint, referenced in the complaint, and central to the allegations contained in Plaintiff's complaint. See *TAS Distributing Co., Inc. v. Cummins Engine Co., Inc.*, 491 F.3d 625, 631 (7th Cir. 2007).

In her response brief, Plaintiff argues that the disclaimer in ITT's policy does not defeat Plaintiff's breach of contract claim. The Court respectfully disagrees. First, Plaintiff's position regarding the content of the disclaimer is unpersuasive under controlling Illinois law. Like the policies at issue in *Moore v. Ill. Bell Tele. Co.*, 508 N.E.2d 519 (Ill. App. Ct. 1991), and *Condon v. Am. Tele. & Telegraph Co.,* 569 N.E.2d 518 (Ill. App. Ct. 1991), ITT's policy contains specific language expressly stating that the document "is not a contract." The language also is conspicuous and prominently displayed on the face of the policy, similar to the disclaimer at issue in *Hicks v. Methodist Med. Ctr.*, 593 N.E.2d 119 (Ill. App. Ct. 1992). Additionally, Plaintiff's argument that the disclaimer only applies to a portion of ITT's policy is similarly unpersuasive. The three-page policy contains numerous subsections entitled "Purpose," "Scope," "Responsibility," "Policy" and "Key Definitions." By claiming that Plaintiff only alleges a breach of the "Responsibility" subsection, Plaintiff effectively is asserting that in order for the disclaimer to apply to the entire policy, it must be included after every section of text. This argument is non-sensical. For example, under Plaintiff's logic, the definitions in the "Key Definitions" subsection would not apply to the other subsections. Plaintiff cannot avoid dismissal of her breach of contract claim by arguing that certain subsections of a three-page policy should be interpreted independent of the policy as a whole. Because Illinois law recognizes that unambiguous, clearly-designated disclaimers preclude the formation of an employment contract, and because ITT's Policy Manual does just that, Plaintiff's breach of contract claim as pled fails.

Plaintiff also asserts that her breach of contract claim is based not only on the policy, but also on certain oral representations made by ITT. This argument also is unpersuasive. In short, Plaintiff offers a new legal theory in the face of controlling Illinois law related to the ITT Policy

Manual's disclaimer. Plaintiff's complaint clearly alleges a breach of the "Sick Pay Policy" and nothing more. Compl. ¶¶ 141-145. But even considering the additional allegations set forth in Plaintiff's response brief, Plaintiff's breach of contract claim still fails. To plead the elements of an enforceable oral contract, Plaintiff must establish an offer and acceptance, consideration, definite and certain terms of the contract, her performance of all required contractual conditions, ITT's breach of the terms of the contract, and damages resulting from the breach. *Mannion v. Stallings & Co., Inc.*, 561 N.E.2d 1134, 1138 (Ill. App. Ct. 1990) (citations omitted). Plaintiff's complaint does not include any allegations about an offer of employment made by ITT for a specific period of time, nor does it sufficiently allege acceptance of such offer. General allegations such as the ones Plaintiff makes—*e.g.*, "Britton assumed she was still employed and would have work when she returned from disability"—do not suffice, as contracts of indefinite duration are considered to be "at will" in Illinois. *Czapla v. Commerz Futures LLC*, 114 F. Supp. 2d 715, 720 (N.D. Ill. 2000). Plaintiff has not pled that she was guaranteed employment with ITT for any specific amount of time, nor has she pled adequate consideration. Thus, the assertions regarding the existence of an oral contract that Plaintiff sets forth in her response brief fail to overcome the presumption of at-will employment.[4] Accordingly, the Court dismisses

---

[4] In an effort to assert her breach of contract claim under a new legal theory clearly not pled in the complaint, Plaintiff includes allegations in her response brief that appear to contradict the allegations made in her complaint. For example, when arguing that ITT and Plaintiff entered into some type of oral contract, Plaintiff claims "Defendants could have informed her she was officially terminated. They did not. Instead, they led her to believe she was still employed." This statement directly contradicts the section of Plaintiff's complaint entitled "ITT Terminates Britton," which contains the following allegation: "[a] month after Breintenberg's assurances, a certified letter was sent to Britton on July 5, 2012, that essentially terminated her." Plaintiff also asserts that "Defendants told Britton that no one had been hired to replace her and that she could continue at ITT as an adjunct instructor." But Plaintiff also alleges that "[t]he letter further informed Britton that due to her 'stated need to be absent from work,' ITT was replacing her effective immediately" and "[w]hen Britton asked if she had been fired, Breitenberg cryptically responded * * * We need to fill the position and our student census is down and we eliminated your full time position." The complaint also alleges that Lisa Breitenberg told Plaintiff to "apply for an

Count VIII.

## B. Negligent and Intentional Infliction of Emotional Distress

Plaintiff also contends that Defendants' actions amounted to both negligent and intentional infliction of emotional distress ("NIED" and "IIED," respectively). A plaintiff who wishes to state a cause of action for NIED must establish the traditional elements of negligence (duty, breach, causation and injury) and that the duty was breached in an extreme and outrageous fashion. See *Cooney v. Chicago Public Schools,* 407 Ill. App. 3d 358, 363 (2010); *Jenkins v. National R.R. Passenger Corp.*, 2008 WL 68685, at *10 (N.D. Ill. Jan. 3, 2008). Unless a plaintiff can first establish that a duty is owed, there can be no cause of action for negligence. *Washington v.. City of Chicago,* 188 Ill.2d 235, 239 (1991). IIED requires: (1) extreme and outrageous conduct by the defendants; (2) intent to cause, or reckless disregard of the probability of causing emotional distress; (3) sever or extreme emotional distress suffered by the plaintiff; and (4) actual and proximate causation of the emotional distress by defendants' outrageous conduct. *Hamros v. Bethany Homes and Methodist Hosp. of Chicago*, 894 F. Supp. 1176, 1180 (N.D. Ill. 1995). Illinois courts have consistently held that the conduct alleged must be particularly egregious; "[i]t has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice' or a degree of aggravation which would entitle plaintiff to punitive damages for another tort. Liability has been found only when the conduct is so outrageous in character, and so extreme in degree, as to go beyond all bounds of

---

open position" and that she would be "demoted to adjunct professor status and would need to reapply with ITT online." These alternative allegations are not only contradictory, but they fail to state a claim for breach of an oral contract.

decency." *Public Finance Corp. v. Davis,* 66 Ill. 2d 85, 89–90 (1976) (citation omitted). Furthermore, "in the employment context, courts have held that Illinois law strictly demands a showing of extreme and outrageous behavior." *Harmo*s, 894 F. Supp. at 1180.

Plaintiff's complaint alleges that Defendants "engaged in extreme and outrageous conduct" that was "negligent" or "intentional" and "caused Britton to suffer damages and injury * * *." Defendants contend that Plaintiff's IIED and NIED claims are preempted by the Illinois Human Rights Act ("IHRA"). Under Illinois law, tort claims that are "inextricably linked" to a cause of action arising under the Illinois Human Rights Act are preempted. *Krocka v. City of Chicago,* 203 F.3d 507, 516 (7th Cir. 2000); see also 775 ILCS 5/8–111(D). The Act prohibits, among other things, age, sex, and disability discrimination. 775 ILCS 5/1–102(A). Here, Counts IX and X merely incorporate by reference the allegations from other counts in Plaintiff's complaint. Additionally, in arguing against preemption, the facts that Plaintiff references are the same facts upon which Plaintiff relies in support of her discrimination claims. See Resp. at 12-14 (referencing inquiries about Plaintiff's return to work date, representations regarding her employment status, and the decision to terminate and subsequently replace Plaintiff with younger males). Thus, Plaintiff's claims appear to be inextricably linked to civil rights violations.

Even if Plaintiff's claims were not preempted, they fail for a more basic reason. Although Plaintiff characterizes Defendants' conduct as extreme and outrageous, the factual allegations of her amended complaint are insufficient to support this conclusion. To begin with, "in the workplace setting, courts have found that terminating an employee in violation of an anti-discriminatory statute, or harshly criticizing or insulting an employee, is not enough to constitute extreme and outrageous conduct." *McKay v. Town and Country Cadillac, Inc.,* 991 F. Supp. 966, 972 (N.D. Ill. 1997) (citing *Harriston v. Chicago Tribune Co.,* 992 F.2d 697, 702–703 (7th

9

Cir. 1993)); *Curran v. JP Morgan Chase, N.A.*, 633 F. Supp. 2d 639, 643 (N.D. Ill. 2009). Plaintiff's allegations come nowhere close to the "extreme and outrageous" conduct required for an IIED or NIED claim—the conduct alleged is not "so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency." *Public Finance Corp.*, 66 Ill. 2d at 89-90; *c.f. Redman v. Gas City, Ltd.* 2007 WL 869561, at *3 (N.D. Ill. Mar. 21, 2007) (denying motion to dismiss plaintiff's IIED claim when plaintiff pled facts alleging that she endured two years of lewd sexually charged comments, was referred to by a derogatory terms, and her complaints to the company about the behavior were ignored). The tort of IIED "does not extend to 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities,'" *McGrath,* 533 N.E.2d at 809 (quoting Restatement (Second) of Torts § 46, comment *d,* at 73 (1965)), and to be actionable, the alleged conduct must be so severe as to cause distress no reasonable person can be expected to endure. *McGrath,* 533 N.E.2d at 809. The only acts of harassment specifically identified in the complaint are that Defendant Breitenberg gave her conflicting responses as to her employment status and Defendant Hay asked Plaintiff if she was ever coming back to work. At best, Plaintiff has alleged that Defendants made administrative decisions regarding her future with ITT and inquired as to when she would return to work from her leave. Defendants' decisions and statement pertaining to her employment fall far short of "extreme and outrageous conduct." See, *e.g.*, *Freeman v. Holy Cross Hosp.*, 2011 WL 1559208 (N.D. Ill. Apr. 25, 2011) (concluding that sexually-based conduct did not qualify as extreme or outrageous); *Porter v. New Age Servs. Corp.*, 2011 WL 1099270 (N.D. Ill. Mar. 22, 2011) (holding that termination alone did not constitute extreme or outrageous conduct).

Additionally, to the extent that Plaintiff contends that her tort claims are premised on the FMLA (and not on the sex, disability, or age discrimination alleged), her claims still fall far short

of establishing the type of extreme conduct remedied through IIED or NIED claims. Her allegations do not suggest that Defendants' behavior so exceeded the type of conflicts and criticisms commonly experienced in the workplace as to enter the realm of an actionable IIED or NIED claim. See *Alcazar-Anselmo v. City of Chicago*, 2008 WL 4813387, at *2 (N.D. Ill. Oct. 27, 2008) ("Even when a plaintiff is entitled to leave under the FMLA, denying an employee's request for leave or discharging an employee for requesting leave is not egregious enough conduct to be considered extreme and outrageous."). For these reasons, the Court dismisses Plaintiff's IIED and NIED claims.

**IV. Conclusion**

For the reasons set forth above, the Court grants Defendants' motion to dismiss Counts VIII, IX, and X of Plaintiff's complaint [15]. Counts I through VII remain pending.

Dated: April 17, 2014

Robert M. Dow, Jr.
United States District Judge